UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **Catherine Worthem,** ) | |
|    *Plaintiff*, ) | |
| ) | No. 1:23-cv-14422 |
| v. ) | |
| ) | |
| **Medical Cost Management Corp.** ) | Jury Trial Demanded |
|    *Defendant.* ) | |

# COMPLAINT

Plaintiff, Catherine Worthem, by and through her attorneys, complains of Defendant, Medical Cost Management Corp., as follows.

## NATURE OF THE ACTION

1. Plaintiff brings this action against her former employer under the Americans with Disabilities Act, 42 U.S.C. §12101 *et seq*. ("ADA"), and the Illinois Human Rights Act, 775 ILCS 5/1-101 *et seq*. ("IHRA"), to rectify Defendant's actions in discriminating against her on the basis of her disability, retaliating against her, and failing to accommodate her disability.

## JURISDICTION AND VENUE

2. Jurisdiction is provided by 28 U.S.C. §1331, as the claim involves violations of the ADA. The Court has supplemental jurisdiction for state law claims under the IHRA pursuant to 42 U.S.C. §1367(a).

3. Plaintiff has complied with all administrative prerequisites by timely filing a Charge of Discrimination with the Equal Employment Opportunity

Commission ("EEOC"), which was cross-filed with the Illinois Department of Human Rights ("IDHR").

4. On May 18, 2023, the EEOC issued a written determination finding that its investigation established reasonable cause to believe Defendant discriminated and retaliated against Plaintiff based on her disability by failing to provide a reasonable accommodation and by discharging her in violation of the ADA.

5. On July 6, 2023, the EEOC served notice that its conciliation efforts with Defendant had failed and issued Plaintiff a Notice of Right to Sue within 90 days.

6. Pursuant to the administrative procedures of the agency, Plaintiff thereafter requested the IDHR to investigate the charge for violations of the Illinois Human Rights Act.

7. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. §1391(b)(2) because the events giving rise to this action occurred within this judicial district.

**PARTIES**

8. Plaintiff, Catherine Worthem, an individual, is a citizen of the State of Illinois and resident of Cook County who was formerly employed by Defendant.

9. Defendant, Medical Cost Management Corp. (hereinafter sometimes referred to as "MCM"), is an Illinois corporation, located in Chicago, Illinois.

10. On information and belief, as of July 2022, MCM was acquired by and now exists as a wholly owned subsidiary of Inetico, LLC d/b/a Valenz Health and/or Valenz Care.

11. At all times relevant hereto, Defendant was a covered employer and Plaintiff was an employee for purposes of the ADA and IHRA.

## FACTUAL ALLEGATIONS

12. Plaintiff began her employment with Defendant MCM in March of 2019 in the position of Intake Coordinator.

13. Ms. Worthem, a single mother of three, left her previous job after receiving an offer of employment from MCM.

14. Ms. Worthem worked out of MCM's satellite office in Lombard, Illinois, located at LineCo Construction Benefit Fund, one of MCM's clients.

15. Plaintiff's duties included initiating pre-certification, pre-authorization, and referral processes and verifying referral information for ERISA governed medical plans sponsored by employers and unions.

16. Throughout her employment, Ms. Worthem consistently performed her duties in an excellent manner and met MCM's legitimate job expectations – never receiving any complaints, discipline, or negative feedback about her work performance or attendance prior to her termination.

17. On October 24, 2019, Ms. Worthem fell deeply ill and experienced black outs and extreme dizziness.

18. Ms. Worthem, who has a brain aneurysm – a condition of which her supervisor, Ms. Diane Gonzalez, was aware – promptly went to the Emergency Room.

19. Ms. Worthem's brain aneurysm causes extreme dizziness, vertigo, nausea, and migraine headaches with aura. Due to the severity of these symptoms,

Ms. Worthem's doctors consider her, at times, to be a fall risk.

20. Before work hours commenced on October 24, 2019, Ms. Worthem advised Ms. Gonzalez of her situation and explained she would not be at work that day. Ms. Gonzalez told Plaintiff to keep MCM posted on her status, and Plaintiff did just that, informing MCM at each step of her status and as to each of her physicians' instructions.

21. Ms. Worthem received a doctor's note saying that she was not to return to work for two days.

22. On October 28, 2019, Ms. Worthem followed up with her doctor, who told her that, as a result of her vertigo, she could not drive and also that she was a fall risk. However, she was cleared to perform work, including work from home.

23. Ms. Worthem's job required zero face-to-face interaction. Indeed, approximately 75% of her work occurred on a computer, and the remaining 25% was done over the phone.

24. MCM allows certain employees to work from home. Moreover, due to an occasional overflow of work at Ms. Worthem's office location, MCM employees from the downtown office location were occasionally required to access MCM's system remotely in order to assist with the overflow in Lombard.

25. It was Ms. Worthem's intention to keep working. However, MCM made no effort to explore work from home, medical leave, or any other accommodations whereby she could continue working.

26. On October 30, 2019, Ms. Worthem attended an appointment with her

neurologist, who confirmed her vertigo diagnosis and told her she could return to work on November 6 with the restrictions that she could not drive to or from work and that she could not walk more than 100 feet unaided.

27. Upon receiving her doctor's restrictions, Plaintiff promptly contacted her supervisor and requested that she be able to continue working. She explained her restrictions and proposed options for accommodation: 1) she be allowed to return to work (arranging herself to have someone drive her to and from the work location) and MCM would provide someone at the location to escort her during the rare occasions when she needed to walk long distances during the work day; or 2) she be allowed to work from home for a short period of time until her restrictions were lifted; or 3) she be granted a short leave of absence until her restrictions were fully lifted.

28. Ms. Worthem used her accrued paid time off in order to attend her doctor appointments, but each time she attempted to keep MCM informed of her ongoing restrictions and appointments, she was met with hostility.

29. Ms. Gonzalez expressed her frustrations and annoyance with Ms. Worthem's restrictions and demanded that Ms. Worthem be released to full duty by her primary care physician.

30. Ms. Worthem told Ms. Gonzalez that she had a follow up appointment with her primary care physician on November 4, 2019, which could, if needed, provide additional clarity about her restrictions.

31. MCM refused to wait for that next appointment, despite it being only days away, and on October 31, 2019, Ms. Gonzalez told Ms. Worthem she was

5

"dismissed from MCM immediately."

32. MCM never provided Ms. Worthem with a reason for why she could not work remotely or make use of any other reasonable accommodation.

33. At the time of her termination, Ms. Worthem still had unused accrued paid time off hours remaining.

34. MCM terminated Plaintiff's employment and then promptly removed her health insurance coverage despite knowing of her upcoming medical appointments.

35. MCM subsequently contested Ms. Worthem's attempt to receive unemployment benefits, requiring her to attend a hearing, where her benefits were ultimately approved.

36. As a result of Defendant's unlawful conduct, Plaintiff has lost wages and other benefits; incurred out-of-pocket medical expenses and/or increased medical insurance premiums; suffered financial hardship, emotional distress, embarrassment, suffering, and humiliation; and suffered damage to her career and reputation and loss of enjoyment of life.

## COUNT I
## VIOLATIONS OF THE AMERICANS WITH DISABILTIES ACT

37. Plaintiff realleges Paragraphs 1 through 36 and incorporates them as though fully set forth herein.

38. Title I of the Americans with Disabilities Act, specifically 42 U.S.C. §12101 *et seq.*, makes it unlawful to discriminate against an employee on the basis of

6

an employee's disability, because of a record of disability, or because the employer regards the employee as suffering from a disability.

39. The Americans with Disabilities Act also makes it unlawful for an employer, an employee, or any agent of an employer to discriminate or retaliate against an employee because she has opposed any unlawful employment practice, and further makes it unlawful discrimination to fail to accommodate an employee's disability.

40. By its conduct as alleged herein, Defendant discriminated against Plaintiff because of her disability, because of her record of a disability, and/or because it regarded her as an individual with a disability, failed to accommodate Plaintiff's disability, and retaliated against Plaintiff for exercising her rights under the ADA.

41. Defendant's conduct toward Plaintiff illustrates a willful and/or reckless disregard of Plaintiff's right to be free from impermissible disability discrimination.

42. Plaintiff demands to exercise her right to a jury trial of this matter.

**WHEREFORE**, Plaintiff respectfully requests that this Court find in her favor and against Defendant on Count I as follows:

a) Declare that Defendant's conduct was in violation of the Americans with Disabilities Act, as amended, and enjoin all officers, agents, employees, and all persons in active concert or participation with them from engaging in further unlawful conduct prohibited by the ADA;

b) Enjoin Defendant and all officers, agents, employees, and all persons in active concert or participation with them to institute and carry out all policies and practices to provide equal employment opportunities for all and to prevent discrimination;

c) Award Plaintiff any applicable compensatory damages, including but not limited to the value of all past and future lost compensation and

      benefits as a result of Defendant's unlawful conduct, as well as for emotional distress;

d) Award Plaintiff pre-judgment interest and additional damages to offset the tax liability on the value of compensation and benefits lost, and which she will lose in the future, as a result of Defendant's unlawful conduct;

e) Award Plaintiff punitive damages;

f) Award Plaintiff reasonable attorney's fees, costs, and disbursements; and

g) Award Plaintiff any and all other relief as the Court deems just in the premises.

## COUNT II
## VIOLATIONS OF THE ILLINOIS HUMAN RIGHTS ACT

43. Plaintiff realleges Paragraphs 1 through 36 and incorporates them as though fully set forth herein.

44. The Illinois Human Rights Act, 775 ILCS 5/1-101 *et seq.*, makes it unlawful to discriminate against an employee on the basis of an employee's disability and makes it unlawful to fail or refuse to accommodate an employee's disability.

45. By its conduct as alleged herein, Defendant discriminated against Plaintiff because of her disability, failed to reasonably accommodate her disability, and/or retaliated against Plaintiff for exercising her rights under the IHRA.

46. Defendant's conduct toward Plaintiff illustrates a willful and/or reckless disregard of Plaintiff's right to be free from impermissible disability discrimination.

47. Plaintiff demands to exercise her right to a jury trial of this matter.

**WHEREFORE**, Plaintiff respectfully requests that this Court find in her favor and against Defendant on Count II as follows:

a) Declare that Defendant's conduct was in violation of the Illinois Human Rights Act, and enjoin all officers, agents, employees, and all persons in active concert or participation with them from engaging in further unlawful conduct prohibited by the IHRA;

b) Enjoin Defendant and all officers, agents, employees, and all persons in active concert or participation with them to institute and carry out all policies and practices to provide equal employment opportunities for all and to prevent discrimination;

c) Award Plaintiff any applicable compensatory damages, including but not limited to the value of all past and future lost compensation and benefits as a result of Defendant's unlawful conduct, as well as for emotional distress;

d) Award Plaintiff pre-judgment interest and additional damages to offset the tax liability on the value of compensation and benefits lost, and which she will lose in the future, as a result of Defendant's unlawful conduct;

e) Award Plaintiff reasonable attorney's fees, costs, and disbursements; and

f) Award Plaintiff any and all other relief as the Court deems just in the premises.

Respectfully submitted,

/s/ John P. Madden
Attorney for the Plaintiff

John P. Madden
Alexandra L. Raynor
O'Malley & Madden, P.C.
542 So. Dearborn Street, Suite 660
Chicago, Illinois 60605
(312) 697-1382
ARDC No. 6243400
jmadden@ompc-law.com